Filed 9/24/14  P. v. Hernandez CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H038995 |
| Plaintiff and Respondent, | (Monterey County Super. Ct. No. SS111766A) |
| v. | |
| ANTHONY HERNANDEZ, | |
| Defendant and Appellant. | |

A jury found defendant Anthony Hernandez guilty of possessing a firearm as a felon.  (Former Pen. Code, § 12021, subd. (a)(1), repealed and reenacted as Pen. Code, § 29800, subd. (a)(1) [Stats. 2010, c. 711, § 6].)[1]  The trial court found allegations of a prior strike conviction and two prior prison terms to be true.  The court sentenced defendant to an aggregate term of seven years in state prison.

Defendant raises two claims on appeal.  First, he contends the trial court erred by admitting evidence of injuries sustained by his girlfriend around the time of the incident, as well as blood evidence found near the crime scene.  Second, he contends the court erred by denying his motion to dismiss his prior strike conviction under *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*).

---

[1] Subsequent undesignated statutory references are to the Penal Code.

We conclude the court did not abuse its discretion as to either ruling. Accordingly, we will affirm the conviction.

## I. FACTUAL AND PROCEDURAL BACKGROUND

A. *Facts of the Offense*

Defendant and his girlfriend, Mercedes Ruiz, lived at the Santa Rita Apartments complex in Salinas. The complex consisted of several two-story buildings separated by parking areas. Defendant and Ruiz lived in Apartment 182, on the second floor of a building in the center of the complex. Melissa Ceballos and her two children lived in Apartment 32 on the second floor of a building on the separate, north side of the complex. Ricky, the father of Ceballos' two children, sometimes stayed at Apartment 32.

Shortly after midnight on September 18, 2011, an anonymous person called 911 and reported that a bald, "Mexican male" with a white shirt was engaged in a "domestic dispute" with a woman at the apartment complex. The caller said the man had pointed a silver gun at the woman and told her to leave. The woman was yelling and appeared intoxicated. The caller was unsure of the apartment number where the dispute was located, but he said it was "probably upstairs, 116, maybe." The caller refused to give his own location.

Police went to Apartment 116 of the complex but found nothing unusual. While they were still at the complex, police received a report of a second 911 call from Melissa Ceballos in Apartment 32. Ceballos told the dispatcher a Hispanic male was knocking on her door. At trial, Ceballos testified that defendant was the person at her door, and that he had been pounding on her door looking for Ricky. She had warned him that she would call the police if he did not go away, but he refused to leave and insisted on waiting outside her apartment. She was scared for her children, so she called the police. She later told the police she had heard the sound of a slide on a handgun being racked. At trial, however, she denied that she had heard that sound, and she testified instead that the sound was "like, metal hitting metal."

2

In response to the 911 call from Ceballos, the police left the building where Apartment 116 was located and went to the building where Apartment 32 was located. As they approached Apartment 32, they pointed their flashlights at the second-floor walkway outside the apartment and saw defendant standing there. His head was shaved, and he was wearing a white t-shirt. Defendant ducked down behind the wall of the walkway; police officers later testified that they heard two thumps that "sounded like something heavy hitting wood." The thumps were consistent with the sound of a handgun being dropped. The police ordered defendant to put his hands up and walk down the stairs to the ground, whereupon he complied and the police detained him. When the police examined the area of the walkway outside Apartment 32 where defendant was standing, they found an unloaded .45-caliber semi-automatic handgun in a space between the floor and the wall of the walkway. The police subsequently processed the handgun for fingerprints and recovered two or three partial prints, but the prints did not contain enough detail to match them to defendant.

After police detained defendant, one of the officers noticed a pool of blood near the front of his patrol car in the parking lot. A single "flip-flop" sandal was lying on the ground near the blood. A vehicle resembling a shuttle bus was parked nearby with the doors open. The officer found a key chain with the name "Anthony" in the area of the bus.

The officer then observed a trail of blood leading up the stairs to the second floor of the building where Apartment 182—defendant's apartment—was located. Officers found more blood in the area outside Apartment 182, including blood on the walkway railing, on the door of the apartment, and a small pool of blood on the floor of the walkway a few feet past the door. A second "flip-flop" sandal—which matched the sandal found in the parking lot—was lying next to the small pool of blood on the floor of the walkway. Officers also found an unfired .45-caliber round on the ground near the

3

pool of blood. The round was the same caliber as the handgun found in front of Apartment 32.

The police questioned Mercedes Ruiz, defendant's girlfriend, who was in Apartment 182. Ruiz had blood on her face, her lips were swollen, and she had a cut on her upper lip. The wounds appeared to be fresh. At trial, the parties stipulated that the blood found outside Apartment 182 and in the parking lot was Ruiz's blood. The parties also stipulated that defendant had previously been convicted of a felony.

B. *Procedural History*

On October 31, 2011, the prosecution charged defendant by information with possessing a firearm as a felon. (Former § 12021, subd. (a)(1).) The information further alleged that defendant had a prior strike conviction and four prior prison terms. (§§ 1170.12, subd. (c)(1), 667.5, subd. (b).) On August 17, 2012, the jury found defendant guilty of possessing a firearm as a felon. In a bifurcated proceeding, the trial court found defendant had been convicted of a prior strike and had served two prior prison terms.

Defendant moved under *Romero* and section 1385 to dismiss his prior strike conviction. At sentencing, the trial court denied the *Romero* motion but struck one of the two prior prison terms. The court sentenced defendant to an aggregate term of seven years: six years—the upper term of three years, doubled for the strike prior—for possessing the firearm, plus one year for the remaining prior prison term.

## II. DISCUSSION

Defendant raises two claims of error. First, defendant contends the trial court erred by admitting evidence of Ruiz's injuries and the blood found at the scene of the crime. Second, defendant contends the court erred by denying his *Romero* motion. We conclude that neither of the court's rulings constituted an abuse of discretion.

4

A. *Admission of Evidence Concerning Ruiz's Injuries and Blood*

1. *Procedural Background*

Defendant moved in limine to exclude any evidence of Ruiz's injuries on the grounds that the evidence was irrelevant and prejudicial. The prosecutor proffered testimony describing, and photographs depicting, multiple areas of blood found at the crime scene as well as the injuries suffered by Ruiz. Among others, the prosecution proffered photographs of the pool of blood found in the parking lot with a sandal several inches away (People's Exhibit 28), the smaller pool of blood on the floor of the walkway outside Apartment 182 with a matching sandal and the unfired .45-caliber round nearby (People's Exhibits 24 through 27), a blood smear on the door of Apartment 182 (People's Exhibit 23), blood smears on the railing outside Apartment 182 (People's Exhibit 21), a blood droplet on the stairs leading up to Apartment 182 (People's Exhibit 20), and Ruiz's injuries, consisting of a cut lip, a swollen mouth, and blood around her face and chest area (Court Exhibit 4). Defendant objected to all this evidence.

The trial court denied defendant's motion in limine. First, the court found that the unfired .45-caliber round found outside Apartment 182 was highly relevant to connect defendant to the .45-caliber handgun found outside Apartment 32. Second, the court found that because the blood evidence was connected to defendant through his girlfriend, the proximity of the blood to the unfired round was relevant to connect defendant to the round. The court preliminarily ruled the blood evidence admissible but encouraged the parties to reach stipulations or pinpoint instructions relating to this evidence, particularly as to the photograph of Ruiz's injuries. Defendant subsequently agreed to stipulate that the blood came from Ruiz. In exchange, the prosecution agreed not to offer the photograph showing Ruiz's injuries; instead, the police would testify about them. The court then reaffirmed its ruling of admissibility as to the remaining evidence, finding that "Although there is some prejudice to the defendant," the evidence was not "unduly prejudicial under a 352 analysis."

5

The prosecution never explicitly argued that defendant inflicted the injuries on Ruiz. But the prosecution argued in closing: "Now, we heard about the blood. And [defense counsel] said she doesn't know what that has to do with anything. [¶] Well, what about a violent act? Does it show that a violent incident happened? We saw the pictures of blood downstairs, blood trail up, blood at the top, with a bullet. A flip-flop down below and a flip-flop up above and keys with the word Anthony on them. You can look at all these exhibits. [¶] Do violent acts involve guns? Not always. For sure. Not always. Could it? I submit to you yes. Do violent acts motivate people to have guns? Yes. Also no. But yes, it does." The prosecutor then argued that "[w]hen you put it all together," the evidence showed defendant had a motive to possess the handgun.

2. *Legal Principles*

" 'Relevant evidence' means evidence, including evidence relevant to the credibility of a witness or hearsay declarant, having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (Evid. Code, § 210.) However, even relevant evidence must be excluded if the danger of prejudice substantially outweighs the probative value of the evidence. Under Evidence Code section 352, "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." " 'Prejudice' in the context of Evidence Code section 352 refers to the possibility of misuse of the evidence—use of the evidence by the trier of fact for a purpose for which the evidence is not properly admissible." (*People v. Hoze* (1987) 195 Cal.App.3d 949, 954.)

3. *Standard of Review*

"A trial court has broad discretion in determining whether to admit or exclude evidence objected to on the basis of section 352 [citation], and rulings under that section will not be overturned absent an abuse of that discretion [citation]. '[T]he term judicial

6

discretion "implies absence of arbitrary determination, capricious disposition or whimsical thinking." ' [Citation.] '[D]iscretion is abused whenever the court exceeds the bounds of reason, all of the circumstances being considered.' [Citation.]" (*People v. Mullens* (2004) 119 Cal.App.4th 648, 658.) Similarly, "[w]e review a ruling denying a motion to exclude photographic evidence on grounds of undue prejudice or cumulativeness for abuse of discretion." (*People v. Ochoa* (1998) 19 Cal.4th 353, 415.)

    4. *Admission of the Evidence Did Not Constitute an Abuse of Discretion*

Defendant argues the evidence of the blood and Ruiz's injuries was irrelevant and prejudicial, such that its admission violated Evidence Code section 352, as well as defendant's rights to due process and a fair trial. Furthermore, defendant argues the evidence was cumulative to other evidence showing defendant possessed the firearm. The Attorney General argues that the evidence was highly relevant to show defendant's possession of the firearm because the blood evidence proved he was the man described by the anonymous 911 caller.

We conclude the evidence was relevant and probative. As the trial court observed, because the unfired round outside defendant's apartment was the same caliber as the handgun found outside Apartment 32, any evidence connecting defendant to the unfired round was relevant to connect him to the handgun. The blood evidence was therefore relevant because it potentially connected defendant to the unfired .45-caliber round by its proximity to the blood. In turn, evidence of Ruiz's injuries was relevant because it potentially connected defendant to the blood itself, which the defense stipulated to be Ruiz's blood.

The jury reasonably could have inferred a connection between defendant and Ruiz's injuries on at least two theories of relevance. First, the jury may have inferred that defendant himself inflicted the injuries on Ruiz. This inference would tend to identify defendant as the Hispanic male described by the anonymous 911 caller, who stated that a "Mexican male" with a white shirt was pointing a gun at a woman. Defendant is correct

that the caller never described the Hispanic male as hitting or injuring the woman, but it is reasonable to infer that a domestic dispute that involved a firearm might also have involved physical violence at some point. Alternatively, the jury may have inferred that some third party—e.g. Ricky, who frequently stayed at Apartment 32—had inflicted the injuries on Ruiz, and that defendant possessed a handgun during his pursuit of the third party. If the jury adopted either theory of relevance, they reasonably could have inferred that defendant possessed the handgun. The evidence was therefore relevant and probative.

We agree with defendant and the trial court that the challenged evidence carried some danger of prejudice. If the jury inferred that defendant inflicted the injuries on Ruiz, the jury may have been emotionally inflamed or otherwise inclined to convict defendant on grounds irrelevant to the charged offense. But the issue here is whether the trial court abused its discretion in finding that the probative value of the evidence was not "substantially outweighed" by the chance of undue prejudice. (Evid. Code, § 352.) Though the evidence was both probative and prejudicial, we conclude that the court's finding—that the probative value of the evidence was not substantially outweighed by its prejudicial effect—did not " 'exceed[] the bounds of reason, all of the circumstances being considered.' " (*Mullens*, *supra*, 119 Cal.App.4th at p. 658.) Under this deferential standard of review, the trial court's ruling did not constitute an abuse of discretion.

As to defendant's argument that the evidence was cumulative, we also conclude the court did not abuse its discretion in this regard. Apart from the challenged evidence, the remaining evidence linking defendant to the handgun was highly circumstantial. None of the witnesses testified that they saw defendant holding the gun. Ceballos saw defendant outside her door, but she never saw defendant holding the gun, and she disavowed her statement to police that she had heard the sound of the slide being racked. The anonymous 911 caller saw a bald, "Mexican male" with a white shirt holding a gun, but the caller never appeared in court, and he never identified defendant as the person in

8

question.  And the partial fingerprints found on the gun could not be matched to defendant's fingerprints.  For all of these reasons, the challenged evidence was substantially probative and not cumulative because it tended to strengthen the connection between defendant and the handgun.  The trial court did not abuse its discretion in making this finding.  Nor did the admission of this evidence "render[] the trial fundamentally unfair" in violation of defendant's rights to due process and a fair trial.  (*Payne v. Tennessee* (1991) 501 U.S. 808, 825.)

Accordingly, we find this claim without merit.

B. *Denial of the Romero Motion*

Defendant contends the trial court erred in denying his *Romero* motion because his convictions put him outside the spirit of the Three Strikes law.  The Attorney General argues that the trial court did not abuse its discretion given defendant's criminal history and the nature of the instant offense.  We agree with the Attorney General.

1. *Procedural Background*

On December 1, 2000, at the age of 21, defendant pleaded guilty to possessing a firearm as a felon and admitted a gang enhancement.  (Former § 12021, subd. (a)(1).)  The trial court sentenced defendant to formal probation with 365 days in county jail as a condition of probation.

First, in moving to dismiss that conviction, defendant argued that the current offense was less serious than the prior offense because he was no longer a gang member.  Second, defendant had been awarded sole custody of his three children and was struggling to support them in an environment controlled by gangs.  Third, defendant argued that he had completed firefighter training in prison, had performed acceptably on parole, and had completed a post-release employment workshop program.  The prosecutor countered that defendant had failed to accept responsibility for the instant offense, that evidence not presented at trial showed he had inflicted the injuries on Ruiz,

9

that he had been convicted of multiple offenses following his prior release, and that he continued to present a danger to the community.

The trial court denied defendant's *Romero* motion on several grounds. The court commended defendant for leaving the gang, but the court described the instant offense as "very violent," and found that it involved "a great deal of potential violence." The court also addressed defendant's complaint of living in an area controlled by gangs. The court stated that this environment did not justify using a gun, and the court found defendant presented a danger to others in doing so. The court also noted defendant's "long criminal history" and found that he had not successfully completed parole. Finally, after observing that the prior offense consisted of similar conduct, the court denied defendant's motion.

2. *Legal Principles Relating to Romero Motions*

Under section 1385, a trial court may strike an allegation or vacate a finding under the " 'Three Strikes' law ([] §§ 667, subds. (b)-(i), 1170.12) that a defendant has previously been convicted of a 'serious' and/or 'violent' felony as defined therein." (*People v. Williams* (1998) 17 Cal.4th 148, 151-152, fn. omitted (*Williams*); *Romero*, *supra*, 13 Cal.4th at p. 504.) However, the court's discretion is limited to instances in which dismissing such strikes is in the furtherance of justice, as determined by giving " ' "consideration both of the constitutional rights of the defendant, and *the interests of society represented by the People. . . ."* ' " (*Romero*, at p. 530, original italics.) Thus, the court may not strike a sentencing allegation "solely 'to accommodate judicial convenience or because of court congestion[' citation, or] simply because a defendant pleads guilty. [Citation.] Nor would a court act properly if 'guided solely by a personal antipathy for the effect that the three strikes law would have on [a] defendant,' while ignoring 'defendant's background,' 'the nature of his [or her] present offenses,' and other 'individualized considerations.' [Citation.]" (*Id.* at p. 531.)

10

In deciding whether to dismiss a strike " 'in furtherance of justice' pursuant to Penal Code section 1385[, subdivision] (a), or in reviewing such a ruling, the court in question must consider whether, in light of the nature and circumstances of his [or her] present felonies and prior serious and/or violent felony convictions, and the particulars of his [or her] background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he [or she] had not previously been convicted of one or more serious and/or violent felonies." (*Williams*, *supra*, 17 Cal.4th at p. 161.) "[A] defendant's sentence is also a relevant consideration when deciding whether to strike a prior conviction allegation; in fact, it is the overarching consideration because the underlying purpose of striking prior conviction allegations is the avoidance of unjust sentences. [Citation.]" (*People v. Garcia* (1999) 20 Cal.4th 490, 500.)

We review a trial court's denial of a *Romero* motion for abuse of discretion. (*People v. Carmony* (2004) 33 Cal.4th 367, 374.) "This standard is deferential. [Citations.] But it is not empty. Although variously phrased in various decisions [citation], it asks in substance whether the ruling in question 'falls outside the bounds of reason' under the applicable law and the relevant facts. [Citations.]" (*Williams*, *supra*, 17 Cal.4th at p. 162.)

3. *Denial of the Romero Motion Did Not Constitute an Abuse of Discretion*

Defendant's argument on appeal largely echoes the arguments he presented below, which the trial court considered and rejected. He contends that his prior strike, committed at the age of 21 as a gang member, was remote in time, and having left the gang, his circumstances have since changed. He argues that the instant offense did not involve violence, but he does not refute the trial court's finding that his possession of a handgun involved great potential for violence. He further argues that the court failed to take into account all of the relevant factors that weighed in favor of granting the motion.

11

The record shows that the court considered the arguments defendant presented below. The court noted that defendant had left the gang, and the court acknowledged defendant's difficult circumstances. But the court found these factors were outweighed by defendant's extensive criminal history and the potential for danger to society inherent in his offenses. The probation report, which sets forth a history of poor performance under supervised release and numerous felony convictions suffered by the defendant since 2000—including yet another conviction for possession of a firearm in 2004—supports the trial court's findings. While the court did not address every fact referenced in defendant's moving papers, defendant cites no authority for the proposition that a court must explicitly analyze all relevant factors on the record. To the contrary, the trial court has no obligation to set forth its reasons for deciding not to strike or dismiss prior strikes. (*In re Large* (2007) 41 Cal.4th 538, 546, fn. 6; see also *In re Coley* (2012) 55 Cal.4th 524, 560.)

We conclude that the trial court's ruling did not " 'fall[] outside the bounds of reason' under the applicable law and the relevant facts." (*Williams*, *supra*, 17 Cal.4th at p. 162.) Accordingly, the denial of defendant's *Romero* motion did not constitute an abuse of discretion.

### III. DISPOSITION

The judgment is affirmed.

12

                                            _____

MÁRQUEZ, J.


WE CONCUR:




_____

BAMATTRE-MANOUKIAN, Acting P.J.




_____

GROVER, J.